HON. PATRICK J. RAYMOND Corporation Counsel, Binghamton
This is in response to your letter asking for an opinion of the Attorney General as to whether or not the Common Council of the City of Binghamton is authorized to enact a local law, without submitting such local law for approval at a referendum, when such local law would amend Second Class Cities Law, § 201 providing for the appointment and hiring by the Council of a special legal counsel to perform Council related duties and to bring legal action on behalf of the Council or members thereof when it has been determined by a majority of the whole membership of the Council that a conflict exists between the Council or members thereof and a department, board or officer of the City of Binghamton and the Corporation Counsel will or shall appear on behalf of such department, board or officer.
City of Binghamton operated under Plan "F" of the Optional City Government Law (Laws of 1914, chapter 444). A summary of Plan "F" of the Optional City Government Law, which appears in a footnote to Article II on page 4 of the Charter of the City of Binghamton, reads as follows:
 "Plan `F' * * * provides for a mayor * * * who is the chief executive and administrative officer of the city * * *. He has custody of the city seal and authenticates all acts of the council and all instruments and papers authorized to be authenticated. The legislative power of the city is, by said paln, vested in a council consisting of [nine members, one elected from each councilmanic district] in the city * * *." (Emphasis supplied; matter in brackets supplied.) (See also Charter of the City of Binghamton, Article I-A, §§ 6 and 7, as added by L.L. 1966, No. 3.)
It should be noted that the above summary is consistent with the definition of Plan "F" of the Optional City Government Law, as it appears in sections 115 and 102 through 108 of Laws of 1914, chapter 444. InSeaman v. Fedourich, 16 N.Y.2d 94 (1965), Judge Fuld, stated:
 "* * * (L. 1914, ch. 444, repealed L. 1939, ch. 765 but `frozen' as to city governments, such as Binghamton, adopted under its authority) * * *."
Optional City Government Law, §§ 102 and 105, which are applicable to the City of Binghamton, provide:
Optional City Government Law, § 102:
 "There shall be a mayor elected at large, who shall be the chief executive officer of the city; he shall maintain peace and good order, and enforce the laws and ordinances therein; he shall see that the duties of the various city officers are faithfully performed. He may appoint all officers of the city who are required by law or by the ordinances to be appointed." (Emphasis supplied.)
Optional City Government Law, § 105:
 "The executive and administrative powers of the city shall be vested in the mayor and such other officers as shall be elected or appointed pursuant to this act."
Second Class Cities Law, § 200, provides, in part:
 "The corporation counsel shall be the head of the department of law. * * *"
Second Class Cities Law, § 201, provides, in part:
 "The corporation counsel shall be and act as the legal adviser of the common council and of the several officers, boards and departments of the city. He shall appear for and protect the rights and interests of the city in all actions, suits and proceedings brought by or against it or any city officer, board or department, including the commissioner of charities in bastardy proceedings; and such officer, board or department shall not employ other counsel. * * *" (Emphasis supplied.)
New York State Constitution, Article IX, § 2(c)(1), provides:
 "(c) In addition to powers granted in the statute of local governments or any other law, (i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government and, (ii) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:
 "(1) The powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees, except that cities and towns shall not have such power with respect to members of the legislative body of the county in their capacities as county officers." (Emphasis supplied.)
Municipal Home Rule Law, § 10(1)(a), implements the constitutional provisions.
New York State Constitution, Article IX, § 3(d)(4), defines a special law as follows:
 "(d) Whenever used in this article the following terms shall mean or include:
* * *
 "(4) `Special law.' A law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages."
Municipal Home Rule Law, § 2(12), defines a special law in similar language.
Since Second Class Cities Law, § 201 does not apply to all cities, the City of Binghamton may amend it pursuant to provisions of Municipal Home Rule Law, § 10(1)(a).
Second Class Cities Law, § 4, provides:
 "A provision of this chapter shall apply, according to its term, only to a city of the state which on the thirty-first day of December, nineteen hundred and twenty-three was a city of the second class, until such provision is superseded pursuant to the municipal home rule law, was superseded pursuant to the former city home rule law or is or was otherwise changed, repealed or superseded pursuant to law."
Municipal Home Rule Law, § 23(2) requires that a local law shall be subject to mandatory referendum where it curtails the power of an elected official.
In Cahn v. Town of Huntington, 29 N.Y.2d 451 (1972), it was stated:
 "Notwithstanding lack of specific statutory authority, a municipal board or officer possesses implied authority to employ counsel in the good faith prosecution or defense of an action undertaken in the public interest, and in conjunction with its or his official duties where the municipal attorney refused to act, or was incapable of, or was disqualified from, acting. * * * This authority is necessarily implied in order to enable the board to effect the purposes of its creation and to allow it to properly function. * * * It should be abundantly clear that in view of the stringent requirements that must be satisfied, the policy underlying the general rule of express authority is certainly not compromised by this exception." (Citations omitted.)
In Edward A. Hanna, as Mayor of the City of Utica, et al. v. Edward A.Rewkowski, et al., 81 Misc.2d 498 (Supreme Court, Oneida County, 1975), it was stated:
 "It is further clear that the courts in this State have recognized an implied authority in municipalities for various boards or branches to appoint independent counsel in cases where there is a clear conflict of interest despite the fact that applicable statutes make no such provision. (Cahn v Town of Huntington 29 N.Y.2d 451; Judson v City of Niagara Falls, 140 App. Div. 62, affd 204 N Y 630.)"
From all of the foregoing, we conclude that the Common Council of the City of Binghamton has an implied authority to appoint independent counsel in cases where there is a clear conflict of interest despite the fact that applicable statutes make no such provision and is authorized to enact a local law for such purpose. Since the appointment of such independent counsel does not fall within the purview of Optional City Government Law, § 102, a local law providing for the appointment of independent counsel by the Common Council would not necessitate its submission to a mandatory referendum as a curtailment of the powers of the elected Mayor.